# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **BENJAMIN D. COCHRAN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **MICHAEL J. ASTRUE, Commissioner** | § | **SA-10-CV-0183 FB (NN)** |
| **of the Social Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:   Honorable Fred Biery**
**Chief United States District Judge**

Plaintiff Benjamin D. Cochran brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Cochran is not disabled for the purposes of the Social Security Act (the Act) and denying Cochran's applications for Disability Income Benefits (DIB) and Supplemental Security Insurance (SSI).  Cochran asked the district court to reverse the Commissioner's decision and to render judgment in his favor.[1]  In the alternative, Cochran asked the court to remand the case for further proceedings.[2]

After considering Cochran's brief in support of his complaint,[3] the brief in support of the

---

[1]Docket entry # 3.

[2]Docket entry # 12, p. 20.

[3]Docket entry # 14.

Commissioner's decision,[4] Cochran's reply brief,[5] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[6]

**Jurisdiction**.  The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

**Administrative Proceedings**.  Based on the record, Cochran exhausted his administrative remedies prior to filing this action in federal court.  Cochran applied for SSI benefits on February 27, 2007, alleging disability beginning on January 6, 2004.[7]  Cochran applied for DIB on May 21, 2007, alleging disability beginning on June 1, 2005.[8]  Cochran associated no event with the alleged on-set dates.  The Commissioner denied Cochran's applications initially and on reconsideration.[9]  Cochran then asked for a hearing before an ALJ.[10]

---

[4]Docket entry # 14.

[5]Docket entry # 15.

[6]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[7]SSA record, p. 128.

[8]*Id*. at p. 131.

[9]*Id*. at pp. 62-65 & 68.

[10]*Id*. at p. 8.

An ALJ held a hearing on September 18, 2008.[11]  The ALJ issued a decision on October 24,

2008, concluding that Cochran is not disabled within the meaning of the Act.[12]  Cochran asked

the Appeals Council to review the decision.[13]  On November 2, 2009, the Appeals Council

declined to review the decision, determining no reason existed for a review.[14]  The ALJ's

decision became the final decision of the Commissioner for the purpose of the district court's

review pursuant to 42 U.S.C. § 405(g).  After receiving an extension of time to file this case[15]

and receiving permission to proceed in forma pauperis, Cochran this action on March 11, 2010

seeking review of the Commissioner's decision.[16]

**Issue Presented**.  Is the ALJ's decision that Cochran is not under a "disability," as

defined by the Act, supported by substantial evidence and does the decision comport with

relevant legal standards?

**Standard of review**.  In reviewing the Commissioner's decision denying disability

benefits, the reviewing court is limited to determining whether substantial evidence supports the

decision and whether the Commissioner applied the proper legal standards in evaluating the

evidence.[17]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such

---

[11]*Id*. at p. 24.

[12]*Id*. at p.2.

[13]*Id*. at p. 7.

[14]*Id*. at p. 2.

[15]*Id*. at p. 1.

[16]Docket entry # 3.

[17]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

3

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[19]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[20]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[21]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[22]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[23]

**Entitlement to benefits**.  Every individual who meets certain income and resource

---

[18]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[19]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[20]*Martinez*, 64 F.3d at 173.

[21]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[22]*Martinez*, 64 F.3d at 174.

[23]*Id*.

requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[24]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[25]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[26]

**Evaluation process and burden of proof**.  The Commissioner's regulations provide that disability claims are to be evaluated according to a five-step process.[27]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[28]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[29]  If so, the claimant will be found not disabled regardless of his

---

[24]42 U.S.C. § 1382(a)(1) & (2).

[25]42 U.S.C. § 1382c(a)(3)(A).

[26]42 U.S.C. § 1382c(a)(3)(B).

[27]20 C.F.R. §§ 404.1520 and 416.920.

[28]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[29]20 C.F.R. §§ 404.1520 and 416.920.

5

medical condition or his age, education, or work experience.[30]  The second step involves

determining whether the claimant's impairment is severe.[31]  If it is not severe, the claimant is

deemed not disabled.[32]  In the third step, the Commissioner compares the severe impairment with

those on a list of specific impairments.[33]  If it meets or equals a listed impairment, the claimant is

deemed disabled without considering his age, education, or work experience.[34]  If the impairment

is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional

capacity (RFC) and the demands of his past work.[35]  If the claimant is still able to do his past

work, the claimant is not disabled.[36]  If the claimant cannot perform his past work, the

Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his

residual capacities, age, education, and work experience, to do other work.[37]  If the claimant

cannot do other work, he will be found disabled.  The claimant bears the burden of proof at the

first four steps of the sequential analysis.[38]  Once the claimant has shown that he is unable to

perform his previous work, the burden shifts to the Commissioner to show that there is other

---

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]*Id.*

[35]*Id.*

[36]*Id.*

[37]*Id.*

[38]*Leggett*, 67 F.3d at 564.

substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of time.[39]  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.[40]

    **The ALJ's findings and conclusions**.  In this case, the ALJ reached his decision at step five of the decision-making process.  The ALJ first determined that Cochran was insured for DIB through June 30, 2007.[41]  At step 1, the ALJ determined that although Cochran had worked since his alleged on-set date of January 6, 2004, his work did not rise to the level of substantial gainful activity.[42]  At step 2, the ALJ determined that Cochran has the following severe impairments: status post right-sided cardiovascular accident (a stroke) with left hand contracture and mild left-hand weakness, hypertension, major depressive disorder, dysthmyic disorder, anxiety disorder, and insulin dependent diabetes mellitus.[43]  At step 3, the ALJ determined that Cochran's impairments do not meet or medically equal an impairment listed in 20 C.F.R. Part 404, subpart

---

[39]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[40]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[41]SSA record, p. 8.  To be eligible for DIB, a person must be fully insured.  *See* 20 C.F.R. § 404.110.  "To be fully insured, a person needs at least six quarters of coverage, but not more than forty quarters of coverage."  Nat'l Org. of. Soc. Sec. Claimants Representatives, 1-2 Soc. Sec. Practice Guide § 2.03 (LexisNexis).  The formula for determining fully insured status is more complicated, but Cochran does not challenge the Commissioner's determination about his date last insured.

[42]SSA record, p. 14.

[43]*Id.*

7

P, appendix 1.[44]  At step 4, the ALJ determined that Cochran has the RFC to do light work, with the following restrictions: Cochran's left, non-dominant arm has a fist contracture; Cochran cannot open and close the left hand, although the thumb of Cochran's left hand can be used for balance and guidance.  Cochran has a good right arm and can lift and carry 20 pounds occasionally and 10 pounds frequently.  He can stand, walk and sit for 6 out of 8 hours in a workday.  Cochran is limited in pushing/pulling with the left arm, but can use his left arm for assistance.  He cannot climb ladders, ropes, or scaffolds, and can occasionally crawl.  He cannot reach with the left arm, but can use it for occasional guidance and grasping with the thumb. Cochran has full reaching/handling ability with the right arm.  He cannot finger with the left hand, but he has no limitations with the right hand.  Cochran must avoid working at unprotected heights, dangerous moving machinery or jobs requiring driving as a condition for employment. Due to his mental limitations, Cochran can only perform simple repetitive tasks.[45]  Because the ALJ found that Cochran has no past relevant work, he proceeded to Step 5.[46]  At that step, the ALJ determined that given Cochran's age, education, work experience, and RFC, jobs exist in the national economy that Cochran can perform.[47]  Because the ALJ determined Cochran can perform work that exists in the national economy, the ALJ concluded that Cochran is not disabled under the Act.[48]

---

[44]*Id*. at p. 16.

[45]*Id*. at pp. 16-17.

[46]*Id*. at p. 21.

[47]*Id*. at p. 22.

[48]*Id*. at p. 23.

**Cochran's allegations of error**.  Cochran complains about the ALJ's Step 5 determination.  Cochran maintains the Step 5 determination is not supported by substantial evidence because the ALJ relied on unreliable vocational expert testimony.  Cochran first complained that the vocational expert testimony is unreliable because all of the occupations named by the vocational expert demand more complex tasks than Cochran can perform.  Cochran based his argument on the ALJ's Step 4 determination that Cochran can only perform simple repetitive tasks, and the Dictionary of Occupational Titles's description of jobs identified by the vocational expert.

The ALJ determined in step 3 that Cochran suffers from nonexertional impairment—specifically, major depressive disorder, dysthmyic disorder and anxiety disorder.  In step 4, the ALJ determined these mental impairments limit Cochran to performing only perform simple repetitive tasks.  "[O]nce the ALJ determines that a claimant suffers from a nonexertional impairment that prevents [him] from performing [his] past work and the full range of other available work, the [Commissioner] must produce 'expert vocational testimony or other similar evidence' to establish that jobs exist in the national economy that the applicant can perform."[49] The Commissioner can obtain such evidence by questioning a vocational expert, using a hypothetical question incorporating the claimant's RFC.  A proper hypothetical question posed to a vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ.[50]  In

---

[49]*Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

[50]*See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) ("Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized

this case, the ALJ asked a vocational expert a hypothetical question about work a person with Cochran's RFC can perform.  The question included the restriction that the person perform simple repetitive tasks.

In response to the hypothetical question, the vocational expert identified the following jobs: self-service parking lot attendant, order clerk in food or beverage industry, and cashier. Cochran complains that the DOT classifies the required reasoning level for a parking lot attendant as level 2, and the reasoning level for order clerk and cashier as level 3.  According to the DOT, reasoning level 2 requires the ability to "[a]pply commonsense understanding to carry-out detailed but uninvolved written or oral instructions," as compared to reasoning level one which requires the ability to "[a]pply commonsense understanding to carry out simple one-or-two step instructions."  Level 3 requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations."  Cochran insists that the limitation of performing simple, repetitive tasks necessarily rules out the ability to perform jobs classified as requiring levels 2 or 3 reasoning ability.

The claimant-appellant in *Meissl v. Barnhart* made a similar argument.  In rejecting the argument, the district court reasoned as follows:

> The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions.  The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one- or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific

by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.").

thinking . . . apprehend the most abstruse classes of concepts" at level six). To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.[51]

As one goes up the numerical reasoning development scale used by the DOT, the level of detail involved in performing the job increases while the job task becomes less routine. For example, a job with a reasoning level of one only requires that the worker be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions" in "standardized situations with occasional or no variables." In contrast, a job with a reasoning level of three would require that the worker "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and deal "with problems involving several concrete variables . . . ."[52]

As in *Meissl*, the "middle ground between these two points is . . . where the vocational expert identified a job with the lowest reasoning development score that [the claimant can] perform;"[53] here, self-service parking lot attendant, order clerk in food or beverage industry, and cashier. At most, the conflict Cochran complains about is an implied or indirect conflict. The conflict is direct only if the court assumes a person limited to performing simple repetitive tasks cannot apply commonsense understanding to carry-out detailed but uninvolved written or oral instructions (level 2) or deal with problems involving several concrete variables in or from standardized situations (level 3).

To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT . . . the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. . . . [A]ll kinds of implicit conflicts are possible and the categorical requirements

---

[51]*Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005).

[52]*Id*. at p. 983.

[53]*Id*.

listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants [are] not . . . permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.[54]

The record in this case reflects an adequate basis for relying on the vocational expert's testimony. The state examining psychologist assessed Cochran's intellectual functioning as below average,[55] but opined that Cochran's attention and concentration are only mildly impaired, and that his immediate, recent and remote memory are generally intact.[56]

To the extent that Cochran relies on Judge Rodriguez's order in *Baty v. Barnhart*, that determination does not control this case.  In *Baty*, Judge Rodriguez found a "direct, explicit conflict between the [VE's] testimony and the DOT that was discussed, albeit briefly, at the hearing before the ALJ."[57]  Here, there is no direct, explicit conflict and no conflict was discussed at the hearing.  Moreover, no medical professional rendered an opinion suggesting that Cochran cannot reason beyond level one.  The vocational expert reviewed the medical consultant's mental RFC before the hearing.[58]  The vocational expert was aware of Cochran's limitations when he testified that a person with Cochran's RFC can work as a self-service

---

[54]*Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000).

[55]SSA record, p. 318.

[56]*Id*. at p. 317.  *See also id*. at p. 334 (psychiatric review technique by Dr. Leela Reddy opining that Cochran is mildly limited in activities of daily living; maintaining social functioning; and maintaining concentration, persistence or pace).

[57]*Baty v. Barnhart*, 512 F. Supp. 2d 881, 893 (W.D. Tex. 2007).

[58]SSA record, p. 432.

parking lot attendant, order clerk in food or beverage industry, and cashier. Cochran has simply scanned the record for an implied or unexplained conflict with the DOT, seized upon a single phrase in the ALJ's determination of RFC, and presented a purported conflict as reversible error.[59] To the extent Cochran now believes a conflict exists, he did not deem it sufficient to merit adversarial development in the administrative hearing. There is no need to remand this case based on Cochran's mental RFC—the ALJ applied the proper standards and considered the entire record. The evidence of mental impairment supports the step-five determination.

Cochran also maintains the vocational expert testimony is unreliable because a conflict exits between his physical RFC and the DOT's description of the identified occupations. Cochran maintains the identified jobs require more manipulation ability than he possesses. Cochran based his argument on the ALJ's Step 4 determination that Cochran cannot reach with his left arm and cannot finger with the left hand. Cochran maintains the vocational expert was required to address the effects of these limitations on his ability to perform the identified jobs.

"When, as here, the claimant suffers from additional limitations that make the Medical-Vocational Guidelines inapplicable, the Commissioner must rely upon the services of a

_____

[59]Cochran's other authorities also do not control this case for the same reason. *See Washington v. Astrue*, No. 3:07-CV-1765, 2008 WL 4921675, at *5-6 (N.D. Tex. Nov. 14, 2008) (remanding where the vocational expert identified a job requiring level 3 reasoning and the ALJ determined the claimant could remember "short and simple instructions" and perform jobs requiring simple, one to two step instructions; the ALJ did not make such a narrow determination in this case); *Woods v. Barnhart*, 458 Fed. Supp. 2d 336, 354 (S.D. Tex. 2006) (characterizing a conflict between the DOT and the vocational expert testimony as direct where the ALJ determined the claimant could perform one-two step tasks in a structured environment with occasional interaction with the public and without high stress, and the DOT's description of a security guard; the ALJ did not make such a narrow determination in this case); *Augustine v. Barnhart*, No. 1:00-CV-749, 2002 WL 31098512, at * 9 (E.D. Tex. Aug. 27, 2002) (remanding where a direct or obvious conflict existed between the DOT description and a vocational expert testimony involving exertional requirement about identified jobs; there is not direct conflict in this case).

13

vocational expert or similar evidence."[60]

> The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job.[61]

"[T]he DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his . . . ability to perform a particular job."[62]

In this case, the ALJ solicited the assistance of a vocational expert because Cochran suffered from impairments which could prevent Cochran from performing the full range of light work.  The ALJ posed a hypothetical question to the vocational expert which included Cochran's limitations in regard to manipulation—that the hand on Cochran's left, nondominant arm does not open and close, and that Cochran cannot reach with his left arm and cannot finger with his left hand.[63]  The vocational expert clarified by stating, "essentially what we're talking about is

---

[60]*Carey*, 230 F.3d at 145.

[61]*Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

[62]*Carey*, 230 F.3d at 145.

[63]As to physical limitations, the hypothetical question included the following: left, non-dominant arm with fist contracture; cannot open or close the left hand, but can use the left thumb to grasp or manipulate a little bit; left arm cannot be used for anything but guidance; can lift/carry 20 pounds occasionally and 10 pounds frequently; cannot pull; cannot climb ladders, ropes or scaffolds; limited to occasional crawling; no reaching or grasping with left arm; must avoid hazards, feeding machinery, unprotected heights, and dangerous machinery; limited to simple, routine, repetitive tasks.  SSA record, p. 55-57.

simple jobs that a person with essentially with one hand and one arm could do."[64]  The vocational expert testified that, in light of those impairments, the claimant could perform the jobs self-service parking lot attendant, order clerk in food or beverage industry, and cashier.

On appeal, Cochran noted that the identified both jobs require handling and fingering for between one-third and two-thirds of the day.  Cochran correctly observed that the DOT does not distinguish between occupations that demand manipulation with both arms and hands versus one arm and hand, but the "DOT does not contain any requirement of bilateral fingering ability or dexterity"[65] and the vocational expert knew that Cochran is restricted in his left arm and hand. No direct and obvious conflict between vocational expert testimony and the DOT exists; the conflict is only alleged.  To the extent an implied or indirect conflict exists, the conflict was resolved by the vocational expert's testimony that he had "seen and . . . placed a number of one-armed individuals" in the job of cashier.[66]

**Recommendation**. Based on the foregoing analysis, I recommend AFFIRMING the Commissioner's decision.  Substantial evidence supports the decision,[67] and the ALJ made no

---

[64]*Id*. at p. 57.

[65]*Carey*, 230 F.3d at 146.

[66]SSA record, p. 58.

[67]*See, e.g.*, *id*. at pp. 32 & 50 (testimony that Cochran cared for his double-amputee mother until she passed on July 21, 2008, as well as his minor niece and nephew);  *id*. at p. 324 (psychiatric review techniques, dated May 15, 2007, reflecting mild impairment in rated areas); *id*. at p. 338 (physical residual functional capacity assessment, dated May 17, 2007, indicating Cochran can lift/carry 50 pounds occasionally, 25 pounds frequently; stand/walk 6 hours in 8-hour day; sit 6 hours in an 8-hour day; but cannot open his left hand due to a stroke); *id*. at p. 347 (treatment note, dated July 20, 2007, noting hypertension is well-controlled); *id*. at p. 388 (treatment note, dated Apr. 16, 2008, stating diabetes is well-controlled).

error of law.

**Instructions for Service and Notice of Right to Object/Appeal**.  The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[68] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and

---

[68]28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[69]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[70]

**SIGNED** on January 31, 2011.

Nancy Stein Nowak
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[69]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[70]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

17